IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES FOR THE USE AND BENEFIT OF IMMOBILIARIA Y CONSTRUCTORA MEXCANUSA, S.A. DE C.V. AND IMMOBLILARIA Y CONSTRUCTORA MEXCANUSA, <br><br>    Plaintiff, <br><br> v. <br><br> CADDELL CONSTRUCTION CO., INC., *et al.*, <br><br>    Defendants. | § § § § § § § § § § § § § § § § § | EP-09-CV-376-KC |

## ORDER

**I.  BACKGROUND**

Plaintiff Immobiliaria y Constructora Mexcanusa ("Mexcanusa") is a construction firm doing business in the Ciudad Juarez area, in Mexico. Pl.'s Am. Compl. ("Compl.") ¶¶ 4, 14 (Doc. No. 3). Defendant Caddell Construction Company ("Caddell") was the prime contractor for the construction of the new United States Consulate Compound in Ciudad Juarez, Mexico (the "Juarez Consulate"), and in February 2007 selected Mexcanusa to do certain types of work on that project. *Id.* ¶¶ 5, 11, 14. The other Defendants in this case are allegedly various co-venturers and Miller Act payment bond sureties of Caddell's. *Id.* ¶¶ 6-10, 12-13. Mexcanusa alleges that Caddell has failed to pay it for the work it did, failed to inform Mexcanusa of the true nature and scope of the work during the negotiation phase, wrongfully claimed against Mexcanusa's completion bond, otherwise breached its contract, and is liable under various

contract, quantum meruit and Miller Act theories, as well as fraud. *Id.* ¶¶ 16-17, 20, 23, 26, 29-30, 33, 36-37, 41-42, .  Mexcanusa has also asked for a declaratory judgment on the completion bond issue raised in this case. *Id.* ¶¶ 44-48.  Caddell and the other Defendants have moved to stay the case, arguing that this dispute is subject to binding arbitration. *See* Defs.' Mot. to Stay ¶¶ 2-3 (Doc. No. 15).

## II. DISCUSSION

### A. Standard

Arbitration clauses contained in commercial contracts are made binding and enforceable by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  Arbitration clauses contained in international commercial contracts are included in this rule by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and the Inter-American Convention on International Commercial Arbitration (the "Inter-American Convention"). *See* 9 U.S.C. § 201 *et seq*. (adopting and implementing the Convention); 3 U.S.T. 2517; 9 U.S.C. § 301 *et seq*.  "In substance, the Convention replicates the Federal Arbitration Act." *Lim v. Offshore Speciality Fabricators, Inc.*, 404 F.3d 898, 904 (5th Cir. 2005) (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil. Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985)).  Accordingly, judicial interpretations of the scope and applicability of the FAA are relevant to international commercial arbitrations conducted pursuant to the Convention. *See id.*

A district could should stay a lawsuit and compel arbitration of an international commercial dispute if "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of commercial legal relationship, and (4) a party to the agreement is not an American

citizen." *Mosqueda v. Offshore Specialty Fabricators, Inc.*, No. H-10-CV-99, 2010 WL 1416786, at*1 (S.D. Tex. Apr. 5, 2010) (citing *Lim*, 404 F.3d at 903). Claims attacking the legality and enforceability of a contract, in addition to claims for breach of an admittedly valid contract, may be subject to binding arbitration under the FAA. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)); *see also generally* David A. Joffe, Case Comment, *Extending the Severability Rule: Buckeye Check Cashing, Inc. v. Cardegna*, 12 HARV. NEGOT. L. REV. 549 (2007).

  B. **Mexcanusa's Claims Are Subject to Binding Arbitration**

Mexcanusa's claims arising from its contract with Caddell are subject to binding arbitration, as the circumstances of the instant case satisfy the four-factor test set forth in *Mosqueda*. First, there is an agreement in writing to arbitrate the dispute. *See* Rider, N.C.C. Constr. Project ("Rider") ¶ 25 (Doc. No. 20-4) ("All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, shall be finally decided by binding arbitration . . . ."). The scope of this language is broad, and it thus includes not only claims that arise out of the contract itself, but also all other disputes "relating to" the subcontract. *See Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (holding that the use of the phrase "relating to" renders an arbitration clause broad in scope). Such a broad arbitration clause reaches "all aspects of the relationship" at issue. *See Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998). Thus, all claims between Mexcanusa and Caddell, made in connection with Mexcanusa's participation in the construction of the Juarez Consulate, are subject to a written arbitration agreement. This

satisfies the first prong of the *Mosqueda* test.

Second, the agreement provides that the arbitration is to take place in Alabama, which is within the territory of the United States, a Convention signatory. *See* Rider ¶ 25 ("[T]he site of the arbitration shall be Montgomery, Alabama."). This satisfies the second prong of the *Mosqueda* test. Third, the agreement to arbitrate arises out of a commercial legal relationship. Specifically, the agreement to arbitrate relates to the subcontractor relationship entered into between Mexcanusa and Caddell in connection with the Juarez Consulate construction project. *See id.* This satisfies the third prong of the *Mosqueda* test.

Fourth, a party to the agreement is not an American citizen. Specifically, Mexcanusa represents itself to be a corporation "organized and existing under the laws of Mexico and doing business in and around Ciudad Juarez." Compl. ¶ 4. Defendants admit to this fact. *See* Defs.' Orig. Answer ("Answer") ¶ 4. For the purposes of the Convention, whether a corporation is a citizen of the United States or not depends on whether "it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202. As all parties admit that Mexcanusa is neither incorporated in the United States or has its principal place of business in the United States, the fourth requirement of the *Mosqueda* test – that one party to the agreement not be an American citizen – is satisfied. Accordingly, all of Mexcanusa's claims against Caddell that arise out of its participation in the Juarez Consulate construction project are subject to the binding arbitration agreement specified above.

Mexcanusa argues that "arbitration of this matter is not proper as Plaintiff seeks to rescind the contract due to fraudulent concealment and fraudulent inducement." Pl.'s Resp. 4 (Doc. No. 17). Mexcanusa claims that the overall subcontract was fraudulently induced because

"Caddell fraudulently concealed facts and calculations" related to "certain plaster work" required by the construction project. *Id.* ¶ 19. Specifically, Mexcanusa states that Caddell mislead it into believing that the contract would call for cheaper and simpler system, and only revealed the true extent of the required work after the contract was signed. *See id.* Mexcanua cites no authority for its proposition, and it is incorrect as a matter of law. Broadly drafted arbitration clauses reach claims sounding in fraud, including claims that a contract should be set aside on the grounds of fraudulent inducement. *See Downer v. Siegel*, 489 F.3d 623, 627-28 & n.4 (5th Cir. 2007) (citing *Prima Paint*, 388 U.S. 403-04) (holding that the FAA's "statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally" and that only a claim that there was "fraud in the inducement of the arbitration clause itself" may be heard in court). Mexcanusa's argument, that the contract should be set aside reasons such as fraudulent inducement, is one that should be directed to an arbitration panel, not a court. *See Buckeye Check Cashing*, 546 U.S. at 445. While this rule was announced by the Supreme Court in the context of domestic arbitration clauses governed solely by the FAA, it is made applicable to international arbitrations under the Convention by the holding in *Lim*. *See* 404 F.3d at 904. Because Mexcanusa's arguments attack the contract generally, they do not serve to place this dispute outside the arbitration clause and instead must be heard by an arbitration panel. Mexcanusa's arguments to the contrary are unpersuasive.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Caddell's Motion. The Court hereby **STAYS** the instant proceedings pending the outcome of arbitration. The Court administratively **CLOSES** the case; however, any party may seek leave to re-open it, if necessary, after arbitration

is concluded. *See Bank of America v. Scott*, No. 3:08-CV-1935-L, 2009 WL 700997, at *1 (N.D. Tex. Mar. 16, 2009).

      **THE CLERK SHALL ADMINISTRATIVELY CLOSE THE CASE.**

      **SO ORDERED.**

      **SIGNED** on this 25th day of June, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE